Next matter is United States v. Omar Amanat et al., 21-229 and 21-2379. Next matter is United States v. Omar Amanat et al., 21-2379 and 21-2379. It's sufficient under Simonelli, but I think the standard is very different in terms of the new trial and the instructional error. And if you look at the indictment, you start with the indictment, right? And the theory of the indictment is that the fraud was causing Maiden to make material misrepresentations and omit material facts to investors about the status of their investments. That's appendix 192 to 93. And then, really importantly, the only theory the government argued to the jury was that there were lies to the Maiden investors to cover up losses. That was in the opening statement, which is not in the appendix, but at pages, transfer pages 121 to 23. And then if you look at the closing, both the main summation and the rebuttal, the government focused only on this argument that the purpose was to cover up losses and send fake information to investors so they wouldn't know that there had been losses in the past. And I would urge the court to look at transcript pages 688, 7 to 94, which is the opening summation by the government. And then, really importantly, in the rebuttal, the government really crystallized that it was emphasizing this information debt motivation theory. And the government pointed the jury to the instructions. At page A751, the prosecutor says, there's a simple principle. If you're an investor, you have the right to know the truth, period, full stop. You have the right to know the truth. And then at appendix 753, listen carefully to the instructions. Investors have to know the truth. That was the government's entire focus in all of its jury arguments. That was the thrust of the theory it presented. Yeah. There's no doubt that because this was before Simonelli just says, you couldn't do it, the government before argued in a way that it would not argue now. But what we have to ask is not on a sufficiency of the evidence notion, which, as you say, would be very difficult, but whether the evidence was so strong that it didn't really make any difference. That's what we have to look at. I understand, Your Honor, but let me make this point. What's critical is what the government argued, because in Simonelli itself, remember, the solicitor general argued to the Supreme Court that the court should affirm on an alternative theory of property. And the Supreme Court expressly held that it is not permitted to do so because it can only affirm on the theory that was presented to the jury. And it cited past Supreme Court decisions such as Chiarella and McCormick, which hold the same thing. So that is the reason. Now, maybe we would have a different case if the government had some valid property theory as an alternative, had argued it to the jury, as sometimes happens. Is that an over-read? I mean, I'm looking at Simonelli right now because I think that that mattered. There's a difference between saying we decline to and one can't. I'm looking at right now the opinion. What do you think? Do you think it is a no court can or that is not our role? That is definitely no court can. I have read these cases many times. Simonelli cites two Supreme Court cases, Chiarella and McCormick, and if you read those cases, you will see they hold the same thing. McCormick is more supportive. That the court is not permitted to affirm on a theory that was not argued to the jury. And I think the principle is a matter of due process and fairness that's underlying that rule, which is clearly the rule. And, you know, the government can't rely on a theory, argue it to the jury, rely on an instruction that turns out to be incorrect and then turn around and say, well, if we had argued something different, the jury might have convicted anyway. No, they don't say might have. They say would have. If they said might have. Well, it doesn't. But my point, Your Honor, is that it doesn't matter. I see my time is up. No, no, no. Yeah, but remember, it's our time. So we'll keep you up there as long as we need you. Can you explain to me, your client has already served his sentence, right? He's served the jail sentence. I believe the supervised release is not yet expired. So what would you have us do at this point in time? Like, what would deciding for you do for your client? Well, two things, Your Honor. So we've made, now we've focused on the Simonelli claim. As I indicated earlier, we're arguing both that the evidence was insufficient or alternatively for a new trial based on the erroneous instructions. If the court were to grant a new trial on those two counts, the government would have to decide whether, in fact, there would be a new trial. If they decided not to, then that part of his conviction would end up getting vacated. If the court agreed with us on our other points, and most particularly the expert point, which we've briefed extensively, he would be entitled to a new trial on all counts. And, again, it would be up to the government whether they were to charge him or not. But that would be upside risk to your client of a new trial and what, a new sentence? Like, what? Well, I'm just trying to figure out what's the end game at this point. So there are two things. Number one, criminal convictions are very bad for people. And so if the end result was that the criminal convictions were dismissed, then you no longer have a record. Okay, so your clients are willing to go through a new trial and take their lumps to their chances with the hopes of? If the government were to retry the case, the government might choose not to do so at this point. I would also just point out that there's Supreme Court case law that a person can't get a higher sentence if they win an appeal. But, obviously, that's just. But you're willing to take whatever chances there might be. Right. And that's why my client and his brother, who also, I believe, has completed his sentence, have chosen to appeal their convictions because these convictions have tremendous consequences for their ability to practice, to do whatever they want to do in their careers and so forth. Okay, so we've got a minute. We'll hear from you, and then we need to hear from Mr. Lubchuk. Thank you. Thank you. Can we start off on where there seems to be some difference? Why wasn't the admissibility of special agents decapolis not simply waived on your part? The admissibility of special agent decapolis testimony? Yes. Can we get the microphones up? Oh, you know what? You can also raise it if it's uncomfortable. I think it's as high as it will go, unfortunately. Okay. So it wasn't waived because, as we argue, it was law of the case at that point. And in particular, in the first trial, there were extensive hearings on the admissibility of these emails, on whether they had been doctored. The judge made detailed findings. But why didn't you preserve it for the record, then, if you thought it was law of the case? Well, it was preserved for the record in that he joined the new trial motion filed by Omar, and Omar raised it. So that, it seems to me, is enough to preserve it. But it also, to be realistic, it would have been futile. But to preserve it for the record, folks say it all the time. They say, Your Honor, I don't want to irritate you because I know you've already ruled on this, but just to make sure my record is clear, I am reserving this, right? I mean, that's what trial counsel does. Well, it was reserved in the motion for a new trial in which we joined Omar's arguments. But I said that's where you think it was preserved. I think that's sufficient to preserve it, and I also think it was law of the case for the reasons stated in our brief. It's hard for me to see how the whole business of the agent, which is quite irrelevant to the other client, has any effect on you because we don't know what the court would have done if a guy came in later. So I find that all kind of bizarre. I don't find it bizarre with respect to Omar, but I'll have some questions about that to the government later. Well, those e-mails were exculpatory and helpful. Had they been available, that would have gone directly to my client's trial strategy. So the fact that in another case other decisions were made, if they brought it in, then you could make your argument then? It's the same case with the same docket number and a co-defendant, Your Honor. So that's our position on that. I would like to get back, though, to what I think was a critical point made by my colleague, which is the holding in Yates v. United States. The Supreme Court found in these circumstances where the proper rule to be applied is that which requires a verdict to be set aside in cases where the verdict is supportable on one legal ground but not another, and it is impossible to tell which ground the jury selected. Here again, as with an Omar's trial, the government argued the theory that has since been found. But isn't your case weaker because you asked for the charge that they gave? I mean, in the other, it turned out to be error after Ciminelli, but here you're the one who asked for the charge and was given. You were wrong to do it, but you did do it. I don't agree, Your Honor, but based on the law at the time, that was a standard instruction given in virtually all wire fraud cases in the Second Circuit. Now, the Supreme Court has held that it is not a crime to deprive someone of information. It is not a crime. And yet that theory was argued by the government and presented to the jury. Okay, but I think the question that Judge Calabresi, and I don't mean to put words in his mouth because he can speak for himself, but I think the question he's saying is aren't you in a different position than Omar because you affirmatively requested it, as opposed to someone who got it and then the Supreme Court told everybody, you know what, this was wrong. It's certainly us that this was a wrong theory. To the extent that I'm in a different position, it doesn't make a difference because— Your position is an error is an error, and even if somebody requests it, it's— No, that is not my position. Okay, please. This particular error. In other words, the jury was instructed if you find that they deprived someone of valuable information, you could find the defendant guilty. It's not simply that there wasn't enough evidence of that. It's that that theory, it's not a crime. So essentially what counsel did, going back to Judge Calabresi's question, is say, well, here's a—you know, it put the theory in front of a jury, which is now not a crime. So if the jury actually followed that theory, and we don't know, there was no special verdict here. If the jury convicted on the information theory invalidated by Simonelli, my client has been found guilty of something which is not criminal. It's not a valid theory under the criminal code of the United States to impose a conviction. In these particular and peculiar circumstances, how often is this going to arise? So you're saying that if somebody, let's leave out a later decision of the Supreme Court, comes in and asks for a charge to the jury which is incorrect on existing law and cannot be a crime, that is given, you can then come back and say, hey, what we asked for was something which would convict my client of a nonexisting crime, therefore we throw the whole thing out? It's all dependent on the circumstances. Yeah, no, but— In this circumstance, yes. You're saying that it is different when what you asked was legally correct at the time and only later. I'm not sure you can get me a case of that, but— Well, I— It's certainly interesting. I'll give you Yates and Capers. Those control this case. Thank you. Okay. Okay, thank you. You'll have your time in rebuttal. Thank you. Thank you. So, Mr. Burnett, I'm asking you to start with why Seminelli doesn't require a new trial. Yes, Your Honor. Seminelli doesn't require a new trial because although there were both the traditional property fraud instruction and the right to control instruction, here there's no reasonable probability that the conviction—that Mr. Amanat, either of the Amanats, would not have been convicted absent the right to control theory, and that's the relevant— McCormick precludes the theory, Your Honor? Or precludes coming out the way that you do. So, Your Honor, I believe the relevant case here is the Coppola case that we cited in our briefing, where this Court held that if the jury necessarily would have had to find facts that would have supported a conviction on both the valid theory and the invalid theory, then this Court can affirm, or should affirm, notwithstanding the fact that there was the invalid theory presented to the jury. Can you harmonize that with McCormick? Appellate courts are not permitted to affirm convictions on any theory they police simply because the facts necessary to support the theory was presented to the jury. I believe that's because of the plain error standard that makes the key difference here. It's not—the error was not preserved below, so the standard is different under the— It couldn't have been preserved because Simonelli was below, right? That's not reasonable. It is, in fact, what defense attorneys are expected to do, and that's, in fact, what happened in Simonelli is the error was preserved, notwithstanding the fact that the right to control theory had long been the law of the circuit. This comes up very regularly, also in the context of Hebeus, where attorneys are expected to preserve errors that they would like to challenge on appeal, even if that is currently a settled standard. Well, but, you know, mainly plain error is to avoid the other side tanking you. Here, they were just following the existing law. So even if we were to apply a plain error, and then it's so clear because they did argue it but not before the jury and so on, this is a situation where plain error cuts in a very different way. They were applying a law that was the law of the time, and that's very different about whether they made the argument, isn't it? Well, I think it's not, Your Honor, because they didn't need to advance it in a full-throated way. They could preserve their record for appeal, and I actually believe Mr. Tuzman, Mr. Amanat's co-defendant in the first trial, did just that. And this can be something as simple as not putting the right to control theory in the proposed jury instructions and noting that for the judge at the charge conference. The fact that there is existing law on point on this issue does not alleviate defense counsel's obligation to note their legal objections in the record, and that's important on plain error review, not because this court can't assess the error. Obviously, it satisfies, in light of Simonelli, the first prong of plain error review is clearly satisfied. All that's different here is the way that the court should look at the facts in terms of whether or not there should be a retrial or not. And here, this is a very different case than the facts leading up to Simonelli. I just want to go back to that for a minute. So, Simonelli, it was not just that the focus of the government's argument at trial was on the right to control theory. It was a very different factual path to get there. The Supreme Court noted in its opinion that at the motion to dismiss stage and going into the charge conference, the government at multiple times stated explicitly that it was not proceeding on a traditional property theory. It was only proceeding on the right to control theory, which is important because it means that Simonelli was not a Yates case. It wasn't a situation where both theories were preserved in the record and presented in instructions to the jury. We are in Yates territory, and that makes a different situation because here the law on Yates is very clear and well established that when there's a Yates plain error, it's not just there's an error, you have to do a retrial. It's that you need to assess the facts and determine whether the defendant has shown a reasonable probability that there wouldn't have been a conviction absent the error. So you're talking that rather than Simonelli or what they said in Gormick and so on, that there is an older line of cases that says when it is obvious, even though it could have been one or the other, then we can affirm. Yes, Your Honor, and I think it's not just that it's an older line of cases than Simonelli, but it's cases involving a fundamentally different legal scenario where both theories are preserved by the government at the trial. Okay, so I'm not saying we're persuaded yet, but if we are, why don't you tell me what are the facts that you thought were sufficient? Yes, Your Honor. So I think the facts that are sufficient are really encapsulated in the Ellington testimony that we cited in our brief, and that's that the object of the scheme here was to lie to investors so they would put money in, continue putting money into Maiden Capital, and not take their money out of Maiden Capital. So I'll just touch briefly on the first one. So the putting money in theory was encapsulated in the message or the part of Maiden's testimony where he described that these investor releases are effectively like marketing materials that go to existing and prospective investors, so they'll put more money in. And we can tell that there is a basis in the record that Mr. Amanat knew that as well because he was on the email that was sent out to prospective investors as well as this just being basic common sense for anyone who's a sophisticated player like Mr. Amanat was. On the redemption point, I think it is important that this was also a scheme to deprive people of money or property because it was tricking them into leaving their money at Maiden Capital rather than trying to take it out of there. And there are actually two cases in this circuit that bear on this keeping theory that we did not cite in our briefs but I think are important on this point. The first is USV Mails, which is 459 F3rd 154, and the second is USV Purcelli, which is 404 F3rd 157. And those make an important textual point about the wire processing. It seems to me that those might support an idea of there being enough there, but I understand Yates to say you don't know which one they picked. So I need you to drill down more closely and indicate why the Ellington testimony and everything else must make it an acceptable theory. Yeah. So I think there's no question. It seems like there's agreement between the parties that to convict on the right to control theory, the jury needed to find that Mr. Amanat conspired with Mr. Maiden to lie to Maiden Capital investors about the state of their investments and the performance of the funds. That is inseparable factually from the traditional wire fraud theory, the money or property theory, because the reason you lie to investors about the state of their funds and the state of their investments is so they'll continue to invest and not pull their money out. And I think the underlying factual scenario that led to all of this is important to understand why those two things are inseparable and why this is just like the Coppola case. And that's that the whole origin of this fraud was the what was referred to as the enable hole, effectively Maiden Capital losing a bunch of money through the enable investment. And if people started pulling their money out of Maiden Capital, the whole set of cards would fall apart. The Maiden hole would be revealed and everyone would get in trouble. So Mr. Amanat and Mr. Maiden needed to convince investors not to pull everything out at once, not to start clawing things back and, in fact, to keep money going in, because that was the way to make sure that this enable hole could stay covered up and they could continue to try and find some solution to it. So the reason that under Yates you should affirm the conviction is that finding guilt on the right to control theory necessarily involved finding all of the same important facts. You are basically saying that the facts that were necessary for a right to control and facts that were not disputed seriously in this case would also convict on a right to property. That's right. There's no reason. That's what you're saying. And if that is so, then under Yates and so on, we can affirm. If instead the finding by the jury of the first part does not necessarily bring us to the second, then we get a problem. I think that's right. The only caveat I'd say is that because it's plain error review, instead of it being necessary, it's a reasonable probability. So there's some judgment that I think the court should apply. Could I turn you a moment to this outrageous entry of de Capua? I found that appalling. Let me just be very blunt. I'm a torts guy, and I know how often under Daubert things are excluded. The fact that you let this guy at the last minute come in with a kooky theory that did about the lying of that appalled me. Now, I must say, I think it probably was harmless because there was so much other evidence. But I really am unhappy with the government bringing in something like that. And I really don't think the government should do things like that. Your Honor, I think this case was an exceptional situation that was precipitated by the fact that Mr. Amanat introduced for the first time. I know that he did, and I know that the first bringing in of de Capua, okay. But the last minute de Capua coming in with his kooky theory for which there was no basis that he knew anything or was an expert, is really something that the government should not do. You know, you don't represent the Department of Public Prosecutions. You represent the Department of Justice. And bringing in something like that I think is really wrong. Now, as I say, I think in context it probably didn't matter because there was so much evidence about this stuff being lying. But really you could have in another case you could be in serious trouble. Your Honor, respectfully, I think the timing here needs to be understood in the context of the way the government was forced to investigate these fabricated e-mails. This was not a situation where it was even immediately apparent from the face of the e-mails that they were fabricated. And the government was put in a position where it was continuously investigating throughout trial. And it had already brought in plenty of evidence that these were fabricated, including evidence by de Capua that they were fabricated. And then at the last minute he comes in with this new theory that has no basis in anything that he knew anything about. That's where my Daubert problem is. And you let it in. Well, Your Honor, I certainly agree with you that there was plenty of evidence beyond de Capua that these e-mails were fabricated. And so to the extent that there was an issue with offering de Capua's testimony here, it was not a harmful error. The government had plenty of pieces, powerful pieces of evidence from which to argue, even without Mr. de Capua, that these e-mails were fabricated, as well as the overwhelming evidence of Mr. Amanat's guilt. So I think it is clear from our perspective that to the extent there was any error, it was a harmless one. On the point about these being kooky theories, I really don't think that's the case. I think Judge Gardefee issued a reasoned opinion after the fact when he was actually presented with this challenge that explained why these were rational and logical conclusions for someone with a background in computer science and digital forensics, like Special Agent de Capua had, to draw. So I think what I think you're not actually interested in arguing with Judge Calabresi about this, but what you're merely suggesting to us is that the district court is the one that decides the reliability and supported it substantially. Am I correct? I would like to see, in a torts case, Judge Gardefee come out the same way. I've been here a long time. I ain't seen it. So I think it's right that it's an abusive discretion standard. And if Judge Gardefee had a torts case where someone introduced fake e-mails midway through, I do think he'd come out the same way here and give the same type of process. I don't think he treated this case differently or didn't appropriately apply the rules. And I think in a lot of ways what Special Agent de Capua was doing was really applying pretty basic concepts of digital forensics to the evidence that were in front of him. And I'm happy to get into the facts of that later. No, I think we're good. I think we've got your argument. And, again, we'll – So, Ms. Shapiro, we have – you have some time. Please. Do you mind starting with the argument that we – that the jury had to necessarily rule on important facts that would support an appropriate jury instruction as opposed to the right to control instruction? Yes, I was going to do that. And I would like to start by pointing out that it's highly telling that my colleague on the other side doesn't bother to address the case of the United States v. Capers from 2021 by Judge Lynch, which is cited in both of our briefs. It's a plain error case in a similar context where there's a new Supreme Court decision. And this court held in that binding decision that on plain error the question is, with regard to an erroneous jury instruction, is as follows. They vacate the conviction because – not because Capers necessarily should be exonerated as a matter of law, but because an erroneous jury instruction makes it impossible to be confident that the jury convicted him. And that's the question. The argument on the other side is that what they found that your client did, which was found to be a conviction on the question of money, would necessarily also find on the undisputed facts that it was on property. I'm getting to that. And that's the question. Yes, I'm getting to that. I think it's important to emphasize that the court held that where it's – you can't be confident the jury convicted on an appropriate set of findings. That's the standard, not the one offered by my colleague. Now, in this case, there was – I urged the court to look at and carefully review both the opening statement by the government and both of its summations. You will not find any argument that this was a lie to encourage new investments. And with respect to the idea about the redemptions, that is not enough. In Simonelli, one of the long line of right to control cases that the Supreme Court overruled, which is mentioned explicitly in the Simonelli opinion, is this court's decision from – lies to shareholders and the board of directors. And it's clear from that case, which affirms under this information deprivation theory and the Supreme Court's ruling saying that Wallach and the entire line of cases is no longer good law, that it's – anytime you lie to an investor, the result might be – in this context, the investor might say, I want to redeem. In a case like Wallach's where it's a corporate situation, somebody might decide to sell their stock. The Supreme Court's point is that's not enough. And that's what we have here. Counsel. The entire – Counsel, regardless of the emphasis of the government's argument at trial, does the fact that the jury was instructed on both theories put us under Yates? It is under Yates. That's my point, is that because it's under Yates, we are entitled to a new trial. And I also want to highlight – But if the facts – if the government is right that the facts support both theories and the jury was instructed on both theories, would you concede that that then allows the court to affirm under the remaining theory? No, Your Honor. And I think it's also important – Why not, though? Why not? Because that's not the standard. It's flipping the burden around. There is no way for this court to be certain that the jury relied on a proper theory because the government's whole theory that it was argued to them was all about the lies to the investors, the very information deprivation theory. So your argument is the argument made to the jury matters more than the instructions of both theories given to the jury? It matters a lot because this court has to figure out whether it can determine whether the jury necessarily relied on a proper theory. And if you look at the instruction, unlike many other instructions that I've seen in fraud cases where multiple theories, including the old right to control theory, were charged, this one doesn't explain what the other theory is. At page A759, the judge says, In order to satisfy the first element, the government must also prove the alleged scheme contemplated depriving another of money or property. And then there's no explanation of what is meant. Usually the court will go on to explain the two different theories and what is meant by money and property under one theory versus another. Instead here, the court goes almost immediately, doesn't define property in that regard, and then goes immediately to the point that in this regard, a person is not deprived of money or property only when someone directly takes their money or property. And then it goes on to explain at some length in several paragraphs this information deprivation theory that the Supreme Court has held is invalid. If I could just make one other point with regard to the expert issue. I understand, Judge Palabresi, that you think that this error was harmless, but we vigorously disagree, and I want to make two points in that regard. Number one, there was not overwhelming evidence of guilt. Almost the entire case against Mr. Amina was based on the testimony of Maiden, who, as we've explained extensively in our brief, was a witness of dubious credibility, to say the least. Most of the trial was consumed with evidence about other counts charged against co-defendant Tuzman, who's not before the court on this appeal. And nor was the other evidence about the supposed fake emails overwhelming by any measure. It was only DiCapua, who was trumpeted as the agent of the year and so forth in these government summations, who was highlighted and who came in with this explosive 11th-hour opinion that we had no opportunity to rebut. Thank you, Your Honor. And Mr. Lubchuk. Thank you, Your Honor. On page 718 of the Irfan trial transcript, the assistant U.S. attorney argued that this was a scheme that focuses on the defendant's lies that deprived investors of Maiden capital of the ability to make decisions about what to do with their hard-earned money. It was clearly put, as in Omar's case, in Irfan's case, it was clearly put to the jury on a theory of investors being deprived of information. And that is what we have here. All this entire, the counts against my client all involve information that the government alleges was falsely represented to people downstream. He never dealt with the so-called victims. That was Mr. Maiden who did and the representatives of Kid Digital. All he did was provide information, and the focus of the government's argument was on information. So we believe that the government is simply collapsing the media. So you think your client is differently situated? Like then you don't rise or fall with Omar? No, I believe in both cases we are situated the same and that the government's focus was on the ability of investors to make decisions as opposed to a theft of money or property or an attempt to obtain money or property. Okay. Thank you. Thank you. We will take it under advisement. Thank you. Thank you so much. Thank you.